IN THE UNITED STATES DISTRICT COURT FOR
DISTRICT OF KANSAS

Kansas City Division

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action No. 09-2425-KHV** |
| v. | ) | |
| | ) | |
| MAGELLAN AMMONIA PIPELINE, L.P.; | ) | |
| ENTERPRISE PRODUCTS OPERATING, L.P.; | ) | |
| and MID-AMERICA PIPELINE COMPANY, LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____

## <u>CONSENT DECREE</u>

A.      WHEREAS, Plaintiff the United States of America, on behalf of the United States

Environmental Protection Agency (EPA), has filed a Complaint in this action concurrently with

this Consent Decree against Defendants Magellan Ammonia Pipeline, L.P. ("Magellan"),

Enterprise Products Operating, L.P. ("Enterprise") and Mid-America Pipeline Company

("MAPCO") (collectively "Settling Defendants") under Sections 301, 309 and 311 of the Clean

Water Act ("CWA"), 33 U.S.C. § 1311 et. seq., and Section 103(a) and 109(c) of the

Comprehensive Environmental Response, Liability and Compensation Act ("CERCLA"),

42 U.S.C. §§ 9603(a); 9609(c).

B.      The Complaint alleges that Magellan was the owner of, and Enterprise and

MAPCO were the operators of, an anhydrous ammonia pipeline from which there was a release

of anhydrous ammonia in violation of Sections 301, 309 and 311 of the CWA on October 27,

2004, in Kingman, Kansas and on September 27, 2004 in Blair, Nebraska.

**United States v. Magellan et. al.**
**Consent Decree - Page 1.**

C.       WHEREAS, the United States further alleges in the Complaint that Defendants

Enterprise and MAPCO were the persons in charge of an onshore facility at the time of the

September 27, 2004 discharge at Blair, Nebraska and October 27, 2004, discharge at Kingman,

Kansas and failed to immediately notify the National Response Center of these discharges in

violation of Section 103(a) of CERCLA.

D.       WHEREAS, Settling Defendants do not admit any liability to the United States

arising out of the facts alleged in the Complaint.

E.       WHEREAS, the Parties recognize, and the Court by entering this Consent Decree

finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid

litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public

interest.

NOW, THEREFORE, before taking testimony and without the adjudication or admission

of any issue of fact or law except as provided in Section I, below, and with the consent of the

Parties,  IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.       This Court has jurisdiction over the subject matter of the United States' claims in

this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, Sections 309(b), 311 (b)(7)(E) and

311(n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and 1321(n), and Section 109(c) of

CERCLA, 42 U.S.C. § 9609(c).  The Court has personal jurisdiction over the Parties to this

Consent Decree. Venue lies in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c), and

1395(a), because one of the discharges alleged in the Complaint occurred in, and Settling

Defendants conduct business in, this judicial district.  For purposes of this Decree, or any action

to enforce this Decree, Settling Defendants consent to the Court's jurisdiction and to venue in this judicial district.

## II.  APPLICABILITY

2.      The obligations of this Consent Decree apply to and are binding upon the United States, and upon Settling Defendants, and any successors or assigns except that the obligations set forth in Paragraphs 11-17 and 19, and Sections VI (EPA Approval of Deliverables and Compliance Measures) and VII (Annual Reporting Requirements) are binding only on Defendant Magellan and not on Defendants Enterprise and MAPCO.

3.      No transfer of ownership or operation of the Pipeline or any portion thereof, prior to the Termination Date, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant Magellan of its obligation to ensure that the terms of this Decree are implemented unless EPA agrees to the substitution of the new owner for Defendant Magellan.  Such agreement will not be unreasonably withheld.  Any transfer of ownership or operation of any portion of the Pipeline to any other person must be conditioned upon the transferee's agreement to undertake the obligations required by:  Section V (Compliance Measures), Section VI (EPA Approval of Deliverables or Compliance Methods) and Section VII (Annual Reporting Requirements) of this Decree, as provided in a written agreement between Defendant Magellan and the proposed transferee, enforceable by the United States as a third-party beneficiary of such agreement.  At least thirty (30) Days prior to such transfer, Defendant Magellan shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 7 and to the United States Department of Justice, in

accordance with Section XIII of this Decree (Notices).  Any transfer of ownership or operation

of the Pipeline without complying with this Paragraph constitutes a violation of this Decree.

4.      Defendant Magellan shall provide a copy of this Consent Decree to all officers,

employees, and agents whose duties might reasonably include compliance with any provision of

this Decree.  Defendant Magellan shall also provide to any contractor retained to perform work

required under this Consent Decree with the provisions of the Consent Decree that are relevant

to the work that contractor is performing.  Defendant Magellan shall condition any contract to

perform such work upon performance of the work in conformity with the terms of this Consent

Decree.

5.      Subject to the provisions of Paragraph 3, in any action to enforce this Consent

Decree, Settling Defendants shall not raise as a defense the failure by any of their officers,

directors, employees, agents, or contractors to take any actions necessary to comply with the

provisions of this Consent Decree.

### III.  DEFINITIONS

6.      Terms used in this Consent Decree that are defined or used in the CWA, or in

regulations promulgated thereunder, shall have the meanings assigned to them in such statute or

such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below

are used in this Consent Decree, the following definitions shall apply:

"Calendar Year" or "Year" shall mean the period of time consisting of 365 or 366

days beginning on January 1 and continuing to and including December 31.

"Complaint" shall mean the complaint filed by Plaintiff in this action, unless

noted otherwise.

"Consent Decree" or "Decree" shall mean this Decree.

**United States v. Magellan et. al.**
**Consent Decree - Page 4.**

"Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

"Date of Lodging" shall mean the day that this Consent Decree is lodged with the Court for the public comment period.

"Defendants" or "Settling Defendants" shall mean Magellan Pipeline Company, L.P., Enterprise Products Operating, L.P. and Mid-America Pipeline Company, L.L.C.

"Effective Date" shall mean the day that this Consent Decree is entered and signed by the Court.

"Excavation" shall mean the movement of earth, rock, soil, or other material by any means including blasting, boring, channeling, grading, clearing, tunneling, drilling, jack-hammering, digging, or backfilling below the existing grade by non-mechanical or mechanical equipment or by explosives.  Excavation shall not include normal agricultural practices, including plowing, tilling, planting, and harvesting that are unlikely to reach the depths of the Pipeline.

"EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

"Interest" shall mean interest at the rate specified in 37 U.S.C. § 3717(a)(1).

"One Call" shall mean any system used by a state through which contractors and other excavators may alert the State and utilities to a planned Excavation and determine whether the planned Excavation is in an area where there is a pipeline, electric, gas or other buried conduit or utility.

"Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

"Parties" shall mean the United States and Settling Defendants.

"Pipeline" shall mean the assets used to transport anhydrous ammonia, including all of its components, as depicted on Appendix A, owned and operated by Magellan as of the Date of Lodging of this Consent Decree that are located in the states of Oklahoma, Kansas, Nebraska, Minnesota, and Texas.

"PHMSA" shall mean the Pipeline and Hazardous Materials Safety Administration, currently part of the United States Department of Transportation.

"Plaintiff" shall mean the United States.

"Pipeline Right of Way" or "ROW" shall mean the strip of land or water upon which the Pipeline is located and on which the Defendant Magellan has a legal right to bury, maintain and access the Pipeline.

"Section" shall mean a portion of this Decree identified by a Roman numeral.

"Termination Date" shall mean the date on which Defendant Magellan's obligations under this Consent Decree terminate as provided by Section XVI of this Consent Decree.

"United States" shall mean the United States of America, acting on behalf of EPA.

### IV. <u>PAYMENT OF CIVIL PENALTY</u>

7.      Within thirty (30) days of the Effective Date of this Consent Decree, the Settling Defendants shall pay a civil penalty of  Three Million Six Hundred and Fifty Thousand Dollars ($3,650,000) to the United States for the violations alleged in the Complaint plus Interest calculated from the Date of Lodging of the Decree.  This Payment has been divided as follows:

**United States v. Magellan et. al.**
**Consent Decree - Page 6.**

a.      For the alleged violation of Section 311(b)(7) of the CWA, 33 U.S.C. § 1321(b)(7), with respect to the Discharge at Kingman, Kansas on October 27, 2004:   $3,100,000.

b.      For the alleged violation of  Section 311(b)(7) of the CWA, 33 U.S.C. § 1321(b)(7), with respect to the discharge at Blair, Nebraska on September 27, 2004: $300,000.

c.      For the alleged violation of Section 103(a) of CERCLA, 42 U.S.C. § 9603, regarding the reporting of the Kingman, Kansas and Blair, Nebraska releases to the National Response Center: $250,000.

8.      Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with instructions to be provided to Defendant Magellan, following lodging of this Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Kansas. The payment shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-06074/2.  The payment shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-06074/2.  The payment shall specify that the payments of civil penalties for violations of the Clean Water Act ($3,400,000) is to be deposited into the Oil Spill Liability Trust Fund pursuant to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8) and that the payment of civil penalties of $250,000 for the violations of CERCLA are to be deposited into the Hazardous Substance Superfund established by the Internal Revenue Code, 36 U.S.C. § 9507.  Any funds received after 4:00 p.m. Eastern Time shall be credited on the next business day.  At the time of payment, Defendant Magellan shall simultaneously send written notice of payment and a copy of any transmittal documentation to Plaintiff in accordance with Section XIII of this Decree (Notices) and to:

**United States v. Magellan et. al.**
**Consent Decree - Page 7.**

Commander Robert W. Bruce
United States Coast Guard
Office of Claims and Litigation
2100 Second Street, S.W.
Washington, D.C. 20593-0001

9.      Settling Defendants shall not deduct the civil penalties paid under this Section in calculating its federal income tax.

10.     The payment obligations of Settling Defendants as described in this Section are joint and several.

## V.  COMPLIANCE MEASURES

11.     Potential Conflict with DOT Part 195.440, Public Awareness. With respect to matters addressed in Paragraphs 12-19 below, if there is any conflict with DOT Part 195.440, 49 C.F.R. § 195.440, or required compliance with API 1162 or other applicable law or regulations, Defendant Magellan shall comply with the stricter requirement from and after the applicable effective date of such stricter requirement.  The United States retains all enforcement authorities with respect to such stricter requirements under the law but Magellan shall not be subject to stipulated penalties under this Consent Decree for failure to comply with such stricter requirements.

12.     SCADA Operator Training and Evaluation

a.      Within sixty (60) days after the Effective Date, Defendant Magellan shall use a "full pipeline simulator hydraulic model software package" (as utilized in this Paragraph, the term "full pipeline simulator hydraulic model software package" shall mean a simulator that is capable of closely approximating the look, feel, interactive hydraulic reaction and operation of the associated console) that simulates pipeline ruptures, leaks of the magnitude capable of being detected by the SCADA system and modeled by the hydraulic software package, and transient

conditions.  This software package shall be similar in form and function to the Advantica's

Stoner Pipeline Simulator, Energy Solutions, or Televent's SimSuite Pipeline products.

        b.      Defendant Magellan shall demonstrate to EPA full pipeline simulator

hydraulic model software proficiency on a mutually convenient date to be determined by

Defendant Magellan and EPA not more than six months after the Effective Date.

        c.      Within six (6) months of demonstrating full pipeline simulator hydraulic

model software package proficiency, all of Defendant Magellan's SCADA controllers

(Controllers) shall be trained and qualified on the purchased software package simulation and

then re-trained and qualified at intervals not to exceed eighteen (18) months (unless required at

shorter intervals by other operator program documentation) on purchased or developed

simulation modules.  Further, newly hired Controllers shall be trained using the purchased

software package before they are allowed to operate any part of the pipeline system without

direct supervision.  The Kingman, Kansas and Blair, Nebraska discharges as well as other leak or

rupture conditions experienced within the Pipeline since July 1, 2008, for which adequate data is

available and that are capable of being detected by the SCADA system and modeled by the

hydraulic software package, and any similar leak or rupture scenarios occurring in the future that

are not represented by previously developed scenarios, shall be modeled through this system and

interactive training developed for the Controllers based thereon.  Controllers shall demonstrate

proficiency with simulations and the associated leak or rupture events, recognition of the

developing signs of these conditions and the training modules developed as a result of leak or

rupture conditions.  When possible, training of Controllers shall also be done with the purchased

software system for controller recognition and response to "near miss" conditions and abnormal

operating conditions, using simulations based on previous real events and/or modules designed

to enhance the Controllers' recognition and reaction to abnormal operating condition

development or likely system events requiring Controller response or interaction.  Defendant

Magellan shall document each Controller's proficiency and training on each module of the

purchased or developed software and shall maintain such documentation for three (3) years and

make it available to EPA or PHMSA upon request.  Defendant Magellan shall review each

Controller's performance at intervals not exceeding eighteen (18) months (unless required at

shorter intervals by other operator program documentation), maintain documentation regarding

this review, and provide remedial or additional training as necessary to address any deficiencies

identified in its periodic reviews.

   13.   <u>Instrumentation Maintenance Priority</u>.  Within sixty (60) Days of the

Effective Date, Defendant Magellan shall have procedures in its System Integrity Plan (SIP) to

assign a high repair priority to instrumentation indicators that assist Pipeline Controllers with

leak or rupture detection (such as pressure indicators, pressure/flow/temperature transmitters and

gauges) or provide abnormal operating conditions detection.

   14.   <u>Leak Response Operating Procedures</u>.  Within sixty (60) Days of the Effective

Date, Defendant Magellan shall submit to EPA, for review and approval by EPA (pursuant to

Section VI below), proposed modifications to its operating procedures that will require

Defendant Magellan's SCADA Controllers to initiate the safe shutdown of pumps and the

closure of appropriate remote operated valves in the event that a product release from the

Pipeline is detected or confirmed.  Defendant Magellan shall also have written procedures to

initiate an investigation to determine whether a suspected leak or release is an actual leak or

release as soon as possible (no longer than within two (2) hours) after receipt of information that

a leak or release may be occurring.  Defendant Magellan shall retain documents related to the

development of this procedure or procedures and suspected leak or release response times for three (3) years.  Controllers and other appropriate personnel shall be trained on these shutdown and investigative procedures.  Defendant Magellan shall also have separate shutdown procedures to address suspected leak conditions.  Defendant Magellan's training program for Controllers shall be specific to these suspected leak response shutdown procedures and this training program shall place an emphasis on the Controllers authority to shutdown the pipeline when a product release is detected or suspected (regardless of whether a leak or release has been confirmed).  Both the EPA and the Defendant Magellan recognize that nuisance shutdowns can introduce further safety concerns and that is not the objective of this Paragraph.  Defendant Magellan may propose to exempt certain pipeline segments from the leak response release requirement if Defendant Magellan can demonstrate that this procedure is not advisable because of a particular pipeline segment's geographical, elevation, mechanical, or other features.  EPA will review and approve Defendant Magellan's proposed procedures pursuant to Section VI below.

15.   <u>Aerial Patrol Activities</u>. Within six (6) months of the Effective Date,  at least once every Calendar Year a Defendant Magellan employee will fly with each pilot doing aerial patrols of the Pipeline on behalf of Defendant Magellan, except for substitute pilots that fly infrequently for Magellan to cover for a normal pilot that is unable to fly because of an unplanned event such as illness.  The Defendant Magellan employee shall be trained and qualified in recording and reviewing ROW concerns during the aerial patrol, including but not limited to, encroachments, potential for mechanical damage, exposed pipe and farming methods.  Defendant Magellan shall document its compliance with this Paragraph and retain copies of all documents and communications related to its compliance with this Paragraph for at least three (3) years and make them available to EPA or PHMSA upon request.

16.     <u>Defendant Magellan's Contractor Requirements</u>.  Within six (6) months of the Effective Date, Defendant Magellan shall require that all of its contractors performing Excavation activities on the Pipeline use the One Call system applicable in the State in which they are working and adhere to Excavation best practices of the Common Ground Alliance Best Practices 4.0, available at <u>www.commongroundalliance.com</u>.  Defendant Magellan shall retain copies of all documents and communications related to its compliance with this Paragraph for at least three (3) years and make them available to EPA or PHMSA upon request.

17.     <u>Notification to State of Excavators Not Following One Call</u>.  Beginning on the Effective Date of this Consent Decree, whenever Defendant Magellan becomes aware of any contractors, excavators, ROW owners, or tenants who have performed an Excavation that potentially impacts the Pipeline requiring One Call notification in accordance with applicable state law without notifying an applicable One Call system, Defendant Magellan shall notify the state authorities responsible for enforcement.  Defendant Magellan shall also contact such contractors, excavators, ROW owners or tenants as soon as it becomes aware of such incident and inform them of the One Call system and its importance in preserving pipeline integrity. Defendant Magellan shall retain copies of all documents and communications related to its compliance with this Paragraph for at least three (3) years and make them available to EPA or PHMSA upon request.

18.     <u>Use of Contractors to Fulfill Reporting Obligations</u>.  Settling Defendants shall not use any third party contractors to report discharges as required by Section 103(a) of CERCLA and Section 304 of the Emergency Planning and Community Right to Know Act, 42 U.S.C. §§ 9603(a), 11004.

19.   <u>Funds for Mitigation of External Pipeline Threats and Expedited Response to</u>

<u>Discharges</u>.  During the three (3) year period after the Effective Date of this Consent Decree,

Defendant Magellan shall spend at least $550,000 in total on the following activities to mitigate

external threats to the pipeline: (1) relocating, recovering, lowering or replacing Pipeline

segments not otherwise specifically required by law; and/or (2) the installation of remote shutoff

valves on Pipeline segments not otherwise specifically required by law that would minimize

release volumes, and/or (3) the installation of physical barriers not otherwise specifically

required by law that protect the Pipeline, such as fences or pipeline protective covers such as

concrete barriers, and/or (4) installation of SCADA leak detection instrumentation not otherwise

specifically required by law; and/or (5) the installation of pipeline markers beyond Department

of Transportation Part 195 regulatory requirements, 49 C.F.R. § 195 et. seq., and/or (6) any other

acceptable mitigation efforts that have been pre-approved by EPA pursuant to Section VI below.

 Within the first three (3) Annual Reports required by Section VII below, Defendant Magellan

shall submit documentation of expenditures within the reporting period that are consistent with

these stated purposes, for EPA approval pursuant to Section VI below.  EPA may disapprove any

expenditures claimed by Defendant Magellan in satisfaction of this Paragraph on the sole ground

it does not satisfy one of the six categories described above, subject to Defendant Magellan's

right to Dispute Resolution under Section X of this Consent Decree.  Should EPA take this

action and the Defendant Magellan not be successful in Dispute Resolution (Section X), this

amount shall not be deducted from the total expenditures required by Defendant Magellan

pursuant to this Paragraph, and the obligations for mitigation expenditures shall continue until

EPA has approved $550,000 in expenditures.  This Paragraph does not limit Defendant

Magellan's obligation, if any, to undertake any of the above measures to the extent required by applicable law.

### VI.  EPA APPROVAL OF DELIVERABLES OR COMPLIANCE METHODS

20.    <u>Approval of Deliverables</u>:  After review of any plan, report, designation, expenditures or method of compliance that Defendant Magellan is required to submit to EPA for approval pursuant to this Consent Decree, EPA shall in writing: a) approve the submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder with a written explanation of the grounds for disapproval or d) disapprove the submission with a written explanation of the grounds for disapproval.

21.    If the submission is approved pursuant to Paragraph 20, Defendant Magellan shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 20, Defendant Magellan shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant Magellan's right to  only the specified conditions or the disapproved portions, under Section X of this Decree (Dispute Resolution).

22.    If the submission is disapproved in whole or in part pursuant to Paragraph 20 Defendant Magellan shall, within forty-five (45) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the re-submission is approved in whole or in part, Defendant Magellan shall proceed in accordance with the preceding Paragraph.

**United States v. Magellan et. al.**
**Consent Decree - Page 14.**

23.     Any stipulated penalties applicable to the original submission, as provided in Section VIII of this Decree, shall not accrue unless (1) Defendant Magellan failed to provide any submission by the due date; (2) the original submission, if provided, was so deficient as to constitute a material breach of Defendant Magellan's obligations under this Decree; or (3) any re-submission is untimely or is disapproved in whole or in part because it is so deficient as to constitute a material breach of Defendant Magellan's obligations under this Decree.  Stipulated penalties applicable to the original submission shall be due and payable subject to Paragraphs 27-34 even if a subsequent re-submission is ultimately approved by EPA.

24.     If a submitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant Magellan to correct any deficiencies, in accordance with the preceding Paragraphs.

## VII.  ANNUAL REPORTING REQUIREMENTS

25.     In addition to any submittals or record keeping required above, within three (3) months following the first annual anniversary of the Effective Date, Defendant Magellan shall submit an Annual Report fully documenting the performance of Defendant Magellan of the tasks required by Sections V above including any specific submissions required by those Paragraphs. Thereafter, during the pendency of this Decree, by the annual anniversary of this date, Defendant Magellan shall submit an updated Annual Report documenting the performance of Defendant Magellan of the tasks required by Section V above.  These Annual Reports shall be submitted as specified in Section XIII (Notices).

26.     Each report submitted by Defendant Magellan under this Section shall be signed by a responsible corporate officer of the submitting party and include the following certification:

I certify under penalty of law that this document and its attachments were prepared either by me personally or under my direction or supervision in a manner designed to ensure that qualified and knowledgeable personnel properly gather and present the information contained therein.  I further certify, based on my personal knowledge, or to the best of my knowledge based on my inquiry of those individuals immediately responsible for obtaining the information, that the information is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowingly and willfully submitting a materially false statement.

## VIII.  STIPULATED PENALTIES

27.     If the Settling Defendants fail to make the payment required under Section IV when due, Settling Defendants shall pay a stipulated penalty of ten thousand dollars ($10,000) to Plaintiff per day for each day that the payment is late in addition to Interest under Paragraph 7 above.  Late payment of the civil penalty shall be made in accordance with payment instructions in Section IV above.  Stipulated penalties shall be paid in accordance with the instructions set forth in Paragraph 31 below.

28.     Defendant Magellan shall be liable for stipulated penalties in the amounts detailed below to the United States for all other violations of this Consent Decree, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any obligations under Section V, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.  The amount of the stipulated penalties are:

| Penalty Per Violation Per Day: | Period of Noncompliance: |
| --- | --- |
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $4,000 | 31st day and beyond |

29.     Stipulated penalties under this Section shall begin to accrue on the day after

**United States v. Magellan et. al.**
**Consent Decree - Page 16.**

performance is due, and shall continue to accrue until performance is satisfactorily completed or the violation otherwise cured. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree. Settling Defendants shall pay any stipulated penalty owed by it within thirty (30) days of receiving a written demand. The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.

30.     Stipulated penalties shall continue to accrue as provided in Paragraph 29, above, during any Dispute Resolution, with Interest on accrued penalties payable, but need not be paid until the following:

a.     If the dispute is resolved by agreement, Settling Defendants shall pay accrued stipulated penalties determined to be owing, together with Interest, to Plaintiff within thirty (30) Days of the Effective Date of that agreement unless that agreement limits or waives such penalties;

b.     If the dispute is submitted to the Court and Plaintiff prevails in whole or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be owing, together with Interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in Subparagraph c. below;

c.     If any Party appeals the District Court's decision, Settling Defendants shall pay all accrued penalties determined to be owing, together with Interest, within fifteen (15) Days of receiving the final appellate Court decision.

31.     Settling Defendants shall, as directed by the United States in its demand, pay stipulated penalties owing to the United States by EFT or by certified or cashier's check in the amount due, payable to the U.S. Department of Justice, referencing the civil action number

assigned to this case and DOJ Number 90-5-1-1-06074/2, and delivered to the office of the United States Attorney, District of Kansas, to be deposited in the U.S. Treasury.  The payment documents shall specify that the payments are for stipulated penalties to be deposited into the United States Treasury pursuant to 31 U.S.C. § 3302.

32.     Settling Defendants shall not deduct stipulated penalties paid under this Section in calculating federal income tax.

33.     If Settling Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Settling Defendants shall be liable for Interest on such penalties accruing as of the date payment of stipulated penalties became due under Paragraph 29.

34.     Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to Plaintiff for Settling Defendants' violation of this Consent Decree or applicable law.

## IX.  FORCE MAJEURE

35.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant Magellan, of any entity controlled by Defendant Magellan, or of Defendant Magellan's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant Magellan's best efforts to fulfill the obligation.  The requirement that Defendant Magellan exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force

**United States v. Magellan et. al.**
**Consent Decree - Page 18.**

Majeure" does not include Defendant Magellan's financial inability to perform any obligation under this Consent Decree.

36.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant Magellan shall provide notice orally or by electronic or facsimile transmission to EPA within 72 hours of when Defendant Magellan first knew that the event might cause a delay. Within seven (7) Days thereafter, Defendant Magellan shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant Magellan's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant Magellan, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant Magellan shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure.  Failure to comply with the above requirements shall preclude Defendant Magellan from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant Magellan shall be deemed to know of any circumstance of which Defendant Magellan, any entity controlled by Defendant Magellan, or Defendant Magellan's contractors knew or should have known.

37.     If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to

**United States v. Magellan et. al.**
**Consent Decree - Page 19.**

complete those obligations.  An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant Magellan in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

38.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendant Magellan in writing of its decision.  If EPA does not notify the Defendant Magellan of its decision within thirty (30) Days after the Defendant Magellan's notice of a Force Majeure event is received, stipulated penalties associated with violations of this Consent Decree related to the asserted Force Majeure event shall not accrue between the 30th Day after Defendant Magellan's notice was received by EPA and the day that EPA notifies Defendant Magellan of its decision.  Defendant Magellan can seek dispute resolution pursuant to Section X for EPA's failure to give timely notification.

39.     If Defendant Magellan elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of EPA's notice.  In any such proceeding, Defendant Magellan shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant Magellan complied with the requirements of Paragraphs 35 - 38 above.  If Defendant Magellan carries this burden, the delay at issue shall be deemed not to be a violation by Defendant Magellan of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.  DISPUTE RESOLUTION

40.      Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Section shall be the exclusive mechanism for Settling Defendants to

resolve disputes arising under or with respect to this Consent Decree.   Settling Defendants'

failure to seek resolution of a dispute under this Section shall preclude Settling Defendants from

raising any such issue as a defense to an action by the United States to enforce any obligation of

Settling Defendants arising under this Decree.

41.      Informal Dispute Resolution. Any dispute subject to Dispute Resolution under

this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be

considered to have arisen when Settling Defendants send the United States a written Notice of

Dispute. Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal

negotiations shall not exceed thirty (30) Days from the date the dispute arises, unless that period

is modified by written agreement.  If the Parties cannot resolve a dispute by informal

negotiations, then the position advanced by the United States shall be considered binding unless,

within thirty (30) Days after the conclusion of the informal negotiation period, Settling

Defendants invoke formal dispute resolution procedures as set forth below.

42.      Formal Dispute Resolution. Settling Defendants shall invoke formal dispute

resolution procedures, within the time period provided in the preceding Paragraph, by serving on

the United States a written Statement of Position regarding the matter in dispute.  The Statement

of Position shall include, but need not be limited to, any factual data, analysis, or opinion

supporting Settling Defendants' position and any supporting documentation relied upon by

Settling Defendants.

43.      The United States shall serve its Statement of Position within forty-five (45) Days

of receipt of Settling Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Settling Defendants, unless Settling Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

44.     Settling Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within thirty (30) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Settling Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of this Consent Decree.

45.     The United States shall respond to Settling Defendants' motion within the time period allowed by the Local Rules of this Court.   Settling Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

46.     In any dispute brought before the Court under Paragraphs 42-45 above, Settling Defendants shall bear the burden of demonstrating that their position complies with this Consent Decree and the CWA, and that Settling Defendants are entitled to relief under applicable law.

47.     The invocation of dispute resolution procedures under this Section shall not extend, postpone, or affect in any way any obligation of Settling Defendants under this Consent Decree, not directly in dispute. Stipulated penalties with respect to the disputed matter shall

continue to accrue from the first day of noncompliance, but payment shall be stayed pending

resolution of the dispute as provided in Paragraph 30, above.  If Settling Defendants do not

prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in

Section VIII (Stipulated Penalties).

## XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

48.     Except as provided in Paragraph 49 below, the United States hereby covenants

not to sue or assert any claims against Settling Defendants under Sections 309(b), (d) and (g),

and 31l(b)(6) and (7) of the CWA, 33 U.S.C. §§1319(b),(d) and (g), 1321(b)(6) and (7), or under

Section 103(a) of CERCLA, 42 U.S.C. §9603(a), for injunctive relief, administrative or civil

penalties arising from the discharges alleged to have occurred at Kingman, Kansas on or about

October 27, 2004, and at Blair, Nebraska on or about September 27, 2004.

49.     Notwithstanding Paragraph 48 above, the United States reserves, and this Consent

Decree is without prejudice to, its right to institute a claim against Defendant Magellan with

respect to all matters other than those expressly specified in Paragraph 48 including, but not

limited to, the following:

a.      claims based on a failure of Settling Defendants to meet a requirement of

this Consent Decree;

b.      claims for criminal liability;

c.      claims relating to past, present, or future discharges of oil or hazardous

substances other than those alleged in the Complaint;

d.      claims for reimbursement for any disbursements from the federal Oil Spill

Liability Trust Fund arising from the discharged alleged in the Complaint, other discharges or threats of discharge, pursuant to the Oil Pollution Act of 1990 ("OPA"), Section 311(f) of the CWA, including for subrogated claims under Section 1015 of OPA, 33 U.S.C. § 2715;

        e.      claims under the Pipeline Safety Act ("PSA"), 49 U.S.C. § 60101 et. seq. including claims related to the discharges listed in the Complaint;

        f.      claims for natural resources damages (under the CWA, OPA, CERCLA or other legal authority) arising from the discharges listed in the Complaint; and

        g.      claims for injunctive relief or reimbursement of removal or remediation costs under Sections 106 and 107 of CERCLA, 42 U.S.C. §§ 9606, 9607, with respect to the discharges alleged in the Complaint.

      50.      Plaintiff reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to prevent or limit the rights of the United States to obtain penalties or injunctive relief under any federal or state laws, regulations, or permit conditions, except as expressly specified herein.

      51.      In any subsequent administrative or judicial proceeding reserved herein and initiated by the United States for unreimbursed costs, damages, remediation, or other appropriate relief relating to Settling Defendants' violations, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case.  Except as provided herein, Settling Defendants reserve their defenses to any such action.

      52.      This Consent Decree is not a permit, or a modification of any permit, under any

federal, state, or local laws or regulations.   Settling Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Settling Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, or permits.  Plaintiff does not, by its consent to the entry of this Decree, warrant or aver in any manner that Settling Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, or with any other provisions of federal, state, or local laws, regulations, or permits.

53.     This Consent Decree does not limit or affect the rights of Settling Defendants or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Settling Defendants, except as otherwise provided by law.

54.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

55.     Settling Defendants hereby covenant not to sue and agree not to assert any claims related to the discharges alleged the Complaint, or response activities or natural resource damages in connection with those discharges, against the United States pursuant to the CWA, OPA, or any other federal law, state law, or regulation including, but not limited to, any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund, as defined in Section 1001 of OPA, 33 U.S.C. § 2701(11), and any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. §9507) through CERCLA Sections §§106(b)(2), 107, 111, 112, 113 or any other provision of law.

## XII.  COSTS

56.     The Parties shall bear their own costs of this action, including attorneys' fees.

## XIII.  NOTICES

57.     Unless otherwise specified herein, whenever notifications, submissions, reports or

communications are required by this Consent Decree, they shall be made in writing and

addressed to all parties as follows:

United States:

As to the U.S. Department of Justice:

> Chief (re: DJ # 90-5-1-1-06074/2)
> Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Washington, DC  20044-7611

As to EPA Region 7:

> Ward A. Burns, P.E.
> Storage Tank & Oil Pollution Branch
> EPA Region 7
> 901 N. 5th Street
> Kansas City, Kansas  66101


To provide verbal notification as required by this Decree: 913/551-7879

As to Defendant Magellan:

> Paul E. Pratt
> Associate General Counsel
> Magellan Pipeline Company, L.P.
> One Williams Center, Suite 2800
> Tulsa, Oklahoma  74121-2186

> David R. Tripp
> Stinson Morrison and Hecker LLP
> 1201 Walnut, Suite 2900

Kansas City, MO 64106

As to Settling Defendant Enterprise**:**

     Raymond P. Albrecht
     Secretary and General Counsel
     Mid-America Pipeline Company, LLC
     1100 Louisiana Street
     Houston, TX  77210-4324

As to Settling Defendant MAPCO**:**

     Raymond P. Albrecht
     Secretary and General Counsel
     Mid-America Pipeline Company, LLC
     1100 Louisiana Street
     Houston, TX  77210-4324

58.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

59.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.  RETENTION OF JURISDICTION

60.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X (Dispute Resolution) and XV (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XV.  MODIFICATION

61.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to any term of this Decree, it shall be effective only upon approval by the Court.

**United States v. Magellan et. al.**
**Consent Decree - Page 27.**

## XVI.  TERMINATION

62.     Defendant Magellan shall comply with all of the obligations under this Consent Decree for at least three (3) years from the Effective Date.  The obligations of Defendant Magellan under this Consent Decree shall terminate three (3) years after the Effective Date or after Defendant Magellan has satisfactorily complied with the requirements of this Consent Decree for three years, whichever is later.

63.     Defendant Magellan may serve upon the United States a Request for Termination, stating that Defendant Magellan has satisfied those requirements, together with all necessary supporting documentation.

64.     Following receipt by the United States of Defendant Magellan's Request for Termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Defendant Magellan has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the decree.

65.     If the United States disagrees with the termination date as proposed by Defendant Magellan, it may invoke dispute resolution pursuant to Section X of this Consent Decree; or if the United States unreasonably withholds or delays approval of Defendant Magellan's proposed termination date, Defendant Magellan may invoke dispute resolution pursuant to Section X of this Consent Decree.

## XVII.  PUBLIC PARTICIPATION

66.     This Consent Decree shall be lodged with the Court for a period of not less than

thirty (30) Days for public notice and comment, consistent with the procedures set forth in 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding this Consent Decree disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate.  Settling Defendants agree not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Decree.  Settling Defendants consent to entry of this Consent Decree without further notice.

## XVIII.  SIGNATORIES/SERVICE

67.     The Acting Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, on behalf of the United States, and each undersigned representative of Defendant Magellan, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to the terms of this Decree.

68.     This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

69.     Settling Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  The Parties agree that the Settling Defendants need not file an answer to the Complaint in this action unless or until this Court expressly declines to enter this Consent Decree.

## XIX.  INTEGRATION

70.     The Appendix A to this Consent Decree is part of this Decree and fully

enforceable as if set forth within this Decree.

71.     This Consent Decree and Appendix A constitute the final, complete, and

exclusive agreement and understanding among the Parties with respect to the settlement

embodied in this Decree and supersedes all prior agreements and understandings, whether verbal

or written.  No other document, nor any representation, inducement, agreement, understanding,

or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used

in construing the terms of this Decree.

## XX.  FINAL JUDGMENT

72.     Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment between the United States and Settling Defendants.

73.     The Court finds that there is no just reason for delay and therefore enters this

judgment as a final judgment.

This Consent Decree is dated and entered this 30th day of September, 2009.

s/ Kathryn H. Vratil

UNITED STATES DISTRICT JUDGE
District of Kansas

**United States v. Magellan et. al.**
**Consent Decree - Page 30.**

**FOR PLAINTIFF UNITED STATES OF AMERICA**:

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. Magellan</u> <u>Ammonia Pipeline L.P. et al.</u> subject to the public participation requirements of Section XVII of this Consent Decree.

_____
JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

_____
ELIZABETH L. LOEB
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: 202/616-8916
Fax: 202/514-4180
Elizabeth.Loeb@usdoj.gov

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued)**:

LANNY D. WELCH
United States Attorney
District of Kansas

/s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
Ks. S.Ct. No. 14225
(913) 551-6730 (telephone)
(913) 551-6541 (facsimile)
E-mail:Chris.Allman@usdoj.gov

**United States v. Magellan et. al.**
**Consent Decree - Page 32.**

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued)**:

_____

WILLIAM RICE
Acting Regional Administrator
Regional Administrator
U.S. Environmental Protection Agency,
Region 7
Kansas City, Kansas


_____

HOWARD C. BUNCH, Esq.
Sr. Assistant Regional Counsel
U.S. Environmental Protection Agency,
Region 7
901 N. 5th Street
Kansas City, Kansas 66101

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued)**:

_____

CYNTHIA GILES

Assistant Administrator for the Office of

Enforcement and Compliance Assurance

U. S . Environmental Protection Agency

Washington, D.C.


_____

KELLY BRANTNER

Attorney

Office of Enforcement and Compliance Assurance

U.S. Environmental Protection Agency

Mail Code 2243A

1200 Pennsylvania Ave., NW

Washington, D.C.  20460

**<u>FOR SETTLING DEFENDANT MAGELLAN AMMONIA PIPELINE</u>**:


WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. Magellan Ammonia Pipeline L.P. et al.</u> subject to the public participation requirements of Section XVII of this Consent Decree.


Date _____

                                                  _____
                                                  Name
                                                  Title
                                                  Address
                                                  Phone
                                                  Fax
                                                  Email

Agent Authorized to Accept Service on Behalf of Above Signed Party:

Name:_____

Title:_____

Address:_____

_____

Phone Number:_____


**United States v. Magellan et. al.**
**Consent Decree - Page 35.**

**FOR SETTLING DEFENDANT ENTERPRISE PRODUCTS OPERATING**:


WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. Magellan</u> <u>Ammonia Pipeline L.P. et al.</u> subject to the public participation requirements of Section XVII of this Consent Decree.


Date _____

                                                   _____
                                                   Name
                                                   Title
                                                   Address
                                                   Phone
                                                   Fax
                                                   Email


Agent Authorized to Accept Service on Behalf of Above Signed Party:

Name:_____

Title:_____

Address:_____

_____

Phone Number:_____

**<u>FOR SETTLING DEFENDANT MID-AMERICA PIPELINE COMPANY</u>:**

WE HEREBY CONSENT to the entry of the Consent Decree in <u>United States et al. v. Magellan Ammonia Pipeline L.P. et al.</u> subject to the public participation requirements of Section XVII of this Consent Decree.


Date: _____          _____
                             Name
                             Title
                             Address
                             Phone
                             Fax
                             Email

Agent Authorized to Accept Service on Behalf of Above Signed Party:

Name:_____

Title:_____

Address:_____

_____

_____
Phone Number:_____

**United States v. Magellan et. al.**
**Consent Decree - Page 37.**